## (June 18, 1952.)

■

ARCHIBALD BROWN, Respondent, v. P. F. O. TRADING CORPORATION, Appellant.

Appeal from a judgment of the Supreme Court in favor of plaintiff, entered January 18, 1951, in New York County, upon a verdict rendered at a Trial Term.

*Per Curiam.* Plaintiff's assignors, who will hereafter be referred to as plaintiff, were engaged with defendant in a joint venture in the purchase and sale of secondhand clothing. The merchandise was acquired by defendant in this country and shipped to plaintiff for sale in Morocco. While defendant billed plaintiff for the merchandise shipped, including a profit on defendant's cost, plaintiff sold the goods at a further advanced price and profit, and both parties' profits were to be divided equally between them. Their transactions were of two types — " official " transactions, in which payment for the merchandise, by authority of the Moroccan Government, was made to defendant in dollars in advance of shipment, and " stock " transactions, where the merchandise was on consignment and settlement could be made only in francs after sale.

In August, 1947, the parties wished to make some settlement of their rather involved accounts. The terms of their arrangement were incorporated in a letter of August 9th, written by plaintiff to defendant and accepted by the latter. The letter, starting with the statement " I confirm to you that our company will agree to assign for the settlement of the merchandise you have shipped to us for the stock that part of the profits in Dollars coming to it on the two official deals consummated so far ", goes into considerable detail concerning the dollar accounting, repricing of the stock and handling of new business.

Although the case seemed so complicated at trial that it is doubtful whether the jury ever understood it, despite the court's efforts to delineate the issues in the charge, the primary question was the intention of the parties in their letter agreement. Plaintiff contends that the arrangement was a clean-cut surrender on its part of all claims to profits on the completed official transactions, in return for defendant's releasing the stock to plaintiff free of any obligation to pay anything for it. Defendant contends that all that was intended was an application of the amount which it owed plaintiff on account of profits on the official transactions toward the settlement of plaintiff's indebtedness to the defendant for stock.

Because the letter agreement was regarded as ambiguous, the court received parol evidence in the form of testimony of both parties as to what their intention was. The agreement is not altogether clear, perhaps due to inadequacy of the translation from the French. It seems to us, however, that although certain language in the agreement might support plaintiff's construction, the body of the agreement is inconsistent with such an intention. Also, plaintiff's several claims in the present and prior complaints in this action are inconsistent with such a construction and with each other.

While it would have been perfectly simple for the parties in few words to have made the clean-cut settlement which plaintiff contends for — a settlement, incidentally, so highly advantageous to plaintiff that it is hard to imagine why defendant would accept it — the agreement significantly goes into detail as to how the official transactions are to be accounted for and imposes as a condition of the settlement, a repricing of the stock. There would not have been any interest of the parties in these subjects or any purpose in these provisions if the purport of their agreement was one of mutual release. These provisions quite clearly show both that defendant was expected to account for the official transactions and that plaintiff was expected to pay for the stock, although at a reduced price.

In fact, all that there is in the letter susceptible to the interpretation which plaintiff gives it is the inartistic wording of the first sentence. And as to that it is noteworthy that practically the same wording appears at the end of the letter in reference to some rug transactions. The rug account shows $520 due plaintiff, which amount, plaintiff writes, " we will accept to assign for the settlement of the stock in the same way as the profit share coming to us from the old clothes business already realized (see par. I of the present letter)."

While if plaintiff's interpretation of the agreement were to be accepted, the $520 owing on the rug account would be surrendered in settlement for the stock, plaintiff has succeeded on this branch of the case in asserting a claim and securing a verdict for the $520. What is more significant, however, is the testimony which plaintiff gave by deposition as to the meaning of the language in the letter respecting the rug settlement. Plaintiff there said the " $520 in American dollars [were] to apply against stock transactions." That is the precise contention of the defendant with respect to the meaning of the words " assign for the settlement" of the stock, which appear at both the beginning and the end of the letter of August 9th. The meaning is certainly the same in both places and apparently is what defendant contends it to be and what plaintiff in his deposition stated it to be, namely, that the amount which defendant owed plaintiff in dollars on account of profits on the completed official transactions was to be *applied* against what plaintiff owed defendant for stock.

Finally, plaintiff has made claim for and recovered the amount of $1,148.50 which he paid to defendant in November, 1947, on account of stock. Such a payment would not have been due had plaintiff acquired the stock by the August settlement free of any indebtedness to defendant. Inconsistently with such a settlement, however, plaintiff made the payment. He now takes the position that the payment was made by mistake and represents an overpayment. It seems to us, however, that such a mistake is very unlikely, and that rather the making of the payment is convincing evidence that no such settlement as plaintiff contends for was made.

On the whole, the verdict is so against the weight of the credible evidence as to require a new trial. The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

Peck, P. J., Dore, Cohn, Van Voorhis and Shientag, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.